UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,  )
                                             )
      Plaintiff,  )
                                             )   Case No. 23 CR 17
v.  )
                                             )   Honorable John F. Kness
ANTOINE LARRY,  )
                                             )
      Defendant.  )

**DEFENDANT ANTOINE LARRY'S
REPLY IN SUPPORT OF HIS MOTION FOR A
<u>JUDGMENT OF AQUITTAL OR, ALTERNATIVELY, A NEW TRIAL</u>**

The government's response to Mr. Larry's post-trial motions rests on faulty understandings of statutory text and case law. Its analysis of 18 U.S.C. § 666 presents a boundless theory under which virtually all state and local corruption is a federal crime. Its understanding of 18 U.S.C. § 1951 has a similarly boundless sweep, asserting a federal power to criminalize extortions of drug dealers even if unrelated to their drug dealing. While the insufficiency of evidence alone warrants vacating the convictions on all counts, the instructional errors viewed against the lack of evidence clearly warrant a new trial.

### I.    THE GOVERNMENT'S READING OF § 666 IS UNSUPPORTED BY THE TEXT AND CASELAW, AND BOUNDLESSLY FEDERALIZES STATE AND LOCAL CRIME.

The government's analysis of the § 666 funding requirement is premised on misreadings of the plain text of the statute and the case law. The government's argument regarding the plain meaning of the statutory text critically omits and ignores key statutory language. The government bases its argument largely on the words "government or agency" without accounting

1

for the context in which those words appear. The government ignores the fact that each time those words appear, they do so as part of a list: organization, government, or agency. It is unsurprising that the government does so, given that the Seventh Circuit has construed the statute as it relates to the entity in the list omitted in the government's argument: organizations. As the Seventh Circuit has made clear, "the plain meaning of the statute suggests that there must be an individual who acts as an agent of an organization, the individual must have unlawfully obtained funds from this organization, and the organization must receive over $10,000 in federal funds in any one year period." *United States v. Abu-Shawish*, 507 F.3d 550, 556 (7th Cir. 2007). As construed by the Seventh Circuit, the agency requirement, ownership or control of the targeted property, and federal funding requirement must all be aligned with the same entity.

It is unsurprising that the government ignores the defendant's argument on this ground, because there is no textual argument why one member of the same list should be treated differently than the others. To the contrary, all textual clues point away from the government's reading. The word "such" as used in the phrase "such organization, government, or agency," §§ 666(a)(1)(A)(ii), 666(a)(1)(b), "clearly refers back to section 1 of the statute," *Abu-Shawish*, 507 F.3d at 556, which distinguishes organizations, governments, and government agencies as separate categories of entities. It follows that subsection (b)'s requirement that "*the* organization, government, or agency" receive over $10,000 in federal benefits, 18 U.S.C.A. § 666(b) (emphasis added), is referring to the same organization, government, or agency referenced previously in the statute. The government has failed to provide any meaningful argument why organizations should be treated differently than governments and government agencies when they are all part of the same list.

2

The government further offers no explanation why government agency is defined separately within § 666. Congress could have defined government as *including* any "subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program." Under such a definition, all agents of government agencies would be amenable to prosecution under § 666 where the government at issue received the requisite federal funding. Unfortunately for the government, Congress chose not to paint with so broad a brush. Congress separately delineated government agencies so that there would be some nexus to the federal benefits.

It is clear why the Congress chose to do so; a statute drafted as broadly as the government contends § 666 would be overly expansive and lead to absurd results. Under the government's interpretation, an employee of the Illinois Department of Aging would be subject to prosecution under § 666 if he or she embezzled money or accepted a bribe involving a substantial transaction if the State of Illinois received over $10,000 in disaster relief funds directed at tornado damage. Indeed, every state in the country has received over $10,000 in federal benefits in some form or another.[1] It follows that under the government's reading of § 666, every employee of every state

---

[1] *See* Rebecca Thiess, Samuel Pittman, and Justin Theal, *Federal Share of State Budgets Remains High, But Uncertainties Lie Ahead*, Pew, https://www.pew.org/en/research-and-analysis/articles/2025/06/16/federal-share-of-state-budgets-remains-high-but-uncertainties-lie-ahead?fdsh_map_chart=horizbarchart (last visited April 17, 2026) ("Federal grants accounted for 36%, or $1.09 trillion, of states' combined total revenue in fiscal 2023. The share of revenue from federal grants ranged widely—from 50.1% in Louisiana to 24.1% in Hawaii.").

agency is susceptible to prosecution under § 666 for theft, embezzlement, and bribery of over $5,000, no matter how far removed from the federal benefits a state agency may be.[2]

While the government downplays Mr. Larry's federalism argument, it offers no limiting principle to prevent all state, tribal, and local corruption from becoming a federal crime under § 666. To accept the government's reading would be "to render the traditionally local criminal conduct . . . a matter for federal enforcement." *See Jones v. United States*, 529 U.S. 848, 849 (2000). The government points to no clear expression of congressional intent such that it should be "deemed to have significantly changed the federal-state balance in the prosecution of crimes." *Jones v. United States*, 529 U.S. 848, 850 (2000). In any event, the canon of constitutional avoidance counsels in favor of Mr. Larry's reading. *Id.* at 849.

In fact, Mr. Larry's reading of the statute is supported by the words Congress chose for § 666's title: "Theft or bribery concerning programs receiving Federal funds." 98 Stat. 2143. The Supreme Court "has long considered that 'the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.'" *Dubin v. United States*, 599 U.S. 110, 120–21 (2023) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)) (internal quotation marks omitted); *cf. United States v. Thompson*, 484 F.3d 877, 881 (7th Cir. 2007) (using § 666's caption as support for a narrow reading of the statute). The title of § 666 makes clear that it is targeted at "programs receiving Federal funds." 18 U.S.C. § 666. Thus, if a local government agency is responsible for "the execution of a governmental or intergovernmental program,"18 U.S.C.A. § 666(d)(2), but that program does not receive federal funds, the acts of its agents are not susceptible to prosecution under § 666. Similarly, if a state or

---

[2] There is no plausible reading of the statute that allows for state governments and their agencies to be treated differently than local governments and their agencies.

local government receives the requisite benefits, that does not render the employees of any agency of such state or local government amenable to federal prosecution under § 666 when the agency does not have any relation to the federal benefits. Here, the title, read harmoniously with the operative text of the statue, supports Mr. Larry's reading of the statue and undermines that of the government's reading.

Moreover, to the extent the Court finds ambiguity, it should construe the statute in favor of lenity. "Ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." Jones, 529 U.S. at 849.

The government's reading of the case law is also inconsistent with what the cases actually say.[3] The government plucks a comment from a footnote in *Robinson* without addressing the grounds on which *Robinson* was actually decided.[4] *Robinson*'s holding was based on a finding

---

[3] Tellingly, the government makes no attempt to distinguish the First Circuit's opinion in *DeQuattro*, the reasoning of which squarely supports Mr. Larry's argument:

"[A]we have explained, § 666 does require proof that the allegedly corrupt soliciting of a thing of value by an 'agent' of an entity that § 666 covers -- or corrupt giving of a thing of value to such an agent -- must have occurred 'in connection with' the 'business' of that same entity. And, as we have also explained, § 666 imposes this requirement to ensure that, via subsection (b)'s federal-program assistance requirement, there is a link between the bribery that § 666 prohibits and that federal assistance. Indeed, although the U.S. Department of Justice's Criminal Resource Manual is not binding on us, the defendants note that it states that the intent of Congress in enacting the measure was to require 'that the agent must have illegally obtained cash or property from the [organization, government, or] agency that received the necessary Federal assistance.' U.S. Dep't of Just., Crim. Res. Manual § 1001 (emphasis added)."

*United States v. DeQuattro*, 118 F.4th 424, 439 (1st Cir. 2024), *cert. denied sub nom. Cromwell v. United States*, 145 S. Ct. 2707 (2025).

[4] While the language cited by the government does not undermine Mr. Larry's reading of the statute, it is obitur dictum and thus not binding on this Court. *See Cole Energy Dev. Co. v. Ingersoll-Rand Co.*, 8 F.3d 607, 609 (7th Cir. 1993) (explaining that a lower court is not bound by a higher court's dicta.); *cf. Robinson v. Bergstrom*, 579 F.2d 401, 405 (7th Cir.1978) ("both discussions [in two Seventh Circuit cases] are dicta, and therefore were not binding on the district

that it was "was easily sufficient to prove that *the Chicago Police Department* received $4.2 million in federal funds during the year in question." *United States v. Robinson*, 663 F.3d 265, 270 (7th Cir. 2011). Even if Chicago, as a local government, received the funds initially, the funds went to the Chicago Police Department.

Similarly, in *Grossi*, "[t]he general assistance program [was] not an 'organization, government, or agency.'" *United States v. Grossi*, 143 F.3d 348, 350 (7th Cir. 1998). "As its name implies, it [was] a program carried out by Bloom Township, a 'government' subject to the statute if it receives more than $10,000 in federal money-as the Township concededly does." *Id.* Thus, the Township was the relevant entity for purposes of § 666. Mr. Larry does not make the argument that was rejected in *Grossi*: "that, unless the *program or activity* that was touched by bribery itself received $10,000 in federal funds, the 'circumstance described in subsection (b)' does not obtain." *Id.* (emphasis added). Mr. Larry's argument is that organization, government, or agency that was touched by the theft or bribery must have itself received federal funds. Thus, if the Phoenix Police Department received the requisite amount of federal funding for a specific program or activity, such as purchasing new vehicles, then the facts would be more analogous to those presented in *Grossi* because the relevant entity received the federal benefits. The theft or bribery would not have to be traced to the program itself, because the local government agency received the funds.

The other cases cited by the government fare no better. In *Dawkins*, the relevant organization received the requisite federal benefits. *United States v. Dawkins*, 999 F.3d 767, 783 (2d Cir. 2021). But the reasoning in *Dawkins* supports Mr. Larry's reading, not that of

court"), *overruled on other grounds, Polk Cnty. v. Dodson*, 454 U.S. 312 (1981), *as recognized by Gibson v. City of Chicago*, 910 F.2d 1510, 1514 (7th Cir.1990).

government. While Congress did not "delineate matters so finely in § 666 when speaking of an 'organization' rather than a subset of that organization or its activities," *Id* at 784, it *did* delineate between governments and their agencies. Similarly, *Willis* based its holding on the conclusion "that the Legislature, as a coequal branch of the Government of the Virgin Islands—itself a territorial 'government' that receives in excess of $10,000 in federal funds in a twelve-month period—fell within the scope of § 666 by receiving federal funds." *United States v. Willis*, 844 F.3d 155, 166–67 (3d Cir. 2016). Thus, the Executive Director of the Legislature of the U.S. Virgin Islands was an agent of the government that received federal benefits. *Id.*[5]

Here, the government presented no evidence that the Phoenix Police department received a single dollar of federal benefits. That is clearly distinguishable from *Robinson*, where substantial evidence was presented to establish that the Chicago Police Department received federal benefits. Likewise, it is distinguishable from *Grossi*, where the program was carried out by the local government that itself received federal benefits. Here, the government failed to establish an essential element of the offense: that the local government agency received in excess of $10,000 in federal benefits. No reasonable juror could have found that the government proved the element beyond a reasonable doubt. A judgment of acquittal is thus warranted as to the first object of the conspiracy. At the very least, the evidence preponderates heavily against the evidence such that a new trial is appropriate.

In addition to being factually insufficient, a conviction on the first ground of the conspiracy was legally insufficient. Here, the jury was not required to find that the local

---

[5] *Mitziga* is a non-binding case involving a motion to dismiss that involved a "hodgepodge of arguments that are not all clearly delineated." *United States v. Mitziga*, No. 23 CR 242, 2024 WL 383670, at *2 (N.D. Ill. Feb. 1, 2024). It should not dissuade this Court from undertaking a more thorough analysis of the statute based on the comprehensive briefing and analysis in this case.

7

government agency received the requisite amount in federal benefits. Where the federal benefits element is not satisfied, there is no federal crime. The verdict against Mr. Larry was a general one, such that it is impossible to determine which object the jury based its conviction on. If it agreed as the first object, there was no need for it to consider the second object. The Supreme Court's opinion in *Yates* "requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Yates v. United States*, 354 U.S. 298, 312 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978); *see also United States v. Lee*, 558 F.3d 638, 645 (7th Cir. 2009) ("Because the juries may have based their general verdicts on [a] legally insufficient theory[,] . . . *Yates* requires that these verdicts be set aside.").

Even standing alone, however, the verdict on the second count failed to establish guilt. For the same reasons as stated above, the business[6] of a unit of government is not necessarily the business of an agency thereof. The indictment charged that the business was that of Phoenix, not the Phoenix Police Department. Dkt. 1 at 2 ("intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of *Phoenix* involving a thing of value of $5,000 . . . ." (emphasis added)). And the jury was instructed that the element required that "[t]he person acted with the intent to be influenced or rewarded in exchange for an official act related to some business, transaction, or series of transactions *involving the local government*." Dkt. 113 at 24. The government's proof failed as to this element.

As discussed above, § 666 treats governments and their agencies as separate entities. The same textual principles indicate that the business of a government is not necessarily the business

---

[6] References herein to the "business" of an organization, government, or government agency is used as shorthand for "business, transaction, or series of transactions," 18 U.S.C.A. § 666(a)(1)(B).

of a government agency or vice versa. A contrary interpretation would also lead to absurd results and implicate federalism concerns. Under the government's theory if two agents of the Illinois Department of Natural Resources agree to take bribes to overlook violations for fishing without a license or exceeding a daily catch limit, they intend to be influenced or rewarded in connection with the business of the Illinois government rather than the just the Illinois Department of Natural Resources. Thus, if the agreement exceeds the threshold of $5,000, they would be guilty of a federal conspiracy if the state of Illinois received a federal grant in excess of $10,000 to renovate the Illinois State Capital building. The government's theory again leads to absurd results. Again, all states receive federal benefits in excess of $10,000. If the business of a government agency is necessarily the business of the government, then any bribe by any employee of a state or local government agency of at least $5,000 dollars is necessarily a federal crime. Congress did not speak clearly that it intended to so drastically upset the state-federal apple cart. No rational juror could find that there was any conspiracy accept anything of value intending to be influenced or rewarded in connection with the business of the Village of Phoenix. Thus, the second object of the conspiracy must fail under Rule 29. At the very least, the evidence preponderates so heavily against the verdict that a new trial is warranted under Rule 33.

The government also failed to prove that any agreement to steal or embezzle property under the care, custody, or control of Phoenix or the Phoenix police department. If there was any agreement about theft or embezzlement, it was to take the money before it got into the care custody or control of the Phoenix Police Department. If there was any agreement between Mr. Larry and Snowden, it was to prevent property from entering the care, custody, and control of the police department. That is why it was never entered into evidence. That is why it was not logged in the property logs. That is why Snowden hid money and property in bushes. The

9

government's theory "would require a temporal leap of logic." *See Abu-Shawish*, 507 F.3d at 556. "[O]nly one time frame is contemplated." *Id.* If any stealing was done, it was from individuals. Whether the property should have been entered into the care, custody, and control of the police department under proper procedures is not relevant. Any agreement was to evade those procedures. The legal fiction testified to by Officer Watson doesn't change the fact that any property stolen was prevented from entering the care, custody, or control of the police department.

Moreover, the government failed to establish the $5,000 dollar requirement as to either objective of the conspiracy. The government's attempt to read the $5,0000 requirement out of § 666 would contravenes the text of the statute. The government's citation to *Foy* is does not help its argument; it the *mens rea* required under a separate statute. United States v. Foy, 50 F.4th 616, 624 (7th Cir. 2022) ("Because we affirm the district court's interpretation of the § 2113(b) mens rea requirements, we need not separately analyze intent under § 371."). Under the government's theory, an agreement to use local government funds to purchase a $500 dollar dinner without authorization would be a federal offense. Congress did not criminalize such petty thefts, even in the context of a conspiracy.

And the government's evidence failed to meet the $5,000 threshold beyond a reasonable doubt. Under Rule 33, the Court can consider the credibility of the witnesses. Wilkerson's testimony that he had over $6,000 but failed to report it as stolen is unbelievable on its face. He never contested the property receipt that showed no such cash. Moreover, Cowans never identified Mr. Larry as the officer who stopped him. Even if he had, there was not sufficient testimony to establish that $5,000 dollars was ever stolen individually or in the aggregate. Similarly, the government has not established that there was any bribe solicited in connection

10

with the business of Phoenix that exceeded $5,000. The government points to the solicitation of money from Allison, but he was unwilling to pay the amount. Instead, he turned to the federal government.

## II.     THE GOVERNMENT MISCONSTRUES THE DEPLETION OF ASSETS DOCTRINE UNDER § 1951 AND THE REQUIREMENTS UNDER *TAYLOR*.

The government's response offers no sound basis to hold that the depletion of assets theory applies to individuals. This is true even when applied to drug dealers, as applying the theory to non-drug dealing activities would expand the reach of § 1951 beyond Congress's constitutional power. Likewise, the government fails to adequately account for the limited holding in *Taylor*. A new trial is thus warranted on Counts Two, Three, and Four.

The depletion of assets theory does not apply to individuals. "[U]nder the depletion of assets theory, the *victim-enterprise* must *customarily purchase* goods in interstate commerce." *United States v. Re*, 401 F.3d 828, 835 (7th Cir. 2005). The rule does not apply to individuals. *United States v. Mattson*, 671 F.2d 1020, 1025 (7th Cir. 1982). While it also applies to illicit enterprises such as drug dealing, *see United States v. Marrero*, 299 F.3d 653, 655 (7th Cir. 2002), it does not apply to an individual drug dealer's non-drug-dealing activities. Indeed, *Marrero* found the impact on drug dealing activities to be "vital." *Id.* at 654. Similarly, *Taylor* was clear that drug dealing "is unquestionably an economic activity." *Taylor v. United States*, 579 U.S. 301, 306 (2016). In effect, an individual drug dealer *is* an enterprise with regard to drug dealing activities, just as a sole proprietor is an enterprise in conducting his or her business.

Here, the instruction was broad enough to allow a depletion of assets theory to serve as the basis of conviction even if the extortion had no relation to drug dealing activities. Wilkerson specifically testified that the money taken from him on December 24, 2021, was *not* related to

11

his drug dealing. And there was no evidence that Allison continued drug dealing while on house arrest or that the money taken from him was related to drug dealing activities. Likewise, there was no evidence that there was even the potential to impact interstate commerce while he was on house arrest. The instruction allowed conviction, however, based on a depletion of assets theory applied to both Allison and Wilkerson in their individual, non-drug-dealer capacities. A new trial is therefore warranted on Counts Two, Thee, and Four.

Similarly, the instruction specifically relating to drug dealers was plain error and warrants a new trial. *Taylor* was clear as to the narrowness of its holding: "Our holding today is limited to cases in which the defendant targets drug dealers *for the purpose of stealing drugs or drug proceeds*." *Taylor*, 579 U.S. at 310 (emphasis added). *Taylor* also described the proof that satisfied the standard: "In the present case, the Government met its burden by introducing evidence that Taylor's gang intentionally targeted drug dealers *to obtain drugs and drug proceeds*." *Id.* (emphasis added); *see also United States v. Peoples*, 119 F.4th 1097, 1103 (7th Cir. 2024), *cert. denied,* 145 S. Ct. 2705 (2025) ("What is more, Peoples's own words, recorded on the wiretap, revealed his *intent to target a drug distributor for both drugs and drug proceeds*."). The wording of *Taylor* and quantum of proof it required clearly require proof of intent to target a drug dealer's drugs or drug proceeds. Departing from the requirements of *Taylor* was plain error.[7]

---

[7] While the government contends that the plan error standard applies, its reference to *Olano* is unhelpful. *Olano* dealt with "Federal Rule of Criminal Procedure 52(b), which governs on *appeal from criminal proceedings* [and] provides a *court of appeals* a limited power to correct errors that were forfeited because not timely raised in district court."). *United States v. Olano*, 507 U.S. 725, 731 (1993). Rule 33 empowers the district court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The rule commits the decision to the sound discretion of the trial judge." *United States v. Woolfolk*, 197 F.3d 900, 904 (7th Cir. 1999). Thus, the district court may thus find that an unpreserved error warrants a new trial without resorting to the plain error standard. *See United States v. Anglin*, No. CR-19-

The government does not explain how the federal government has the constitutional power to criminalize extortion unrelated to a drug dealer's drug dealing. If a police officer learned that a drug dealer had been gifted a *Rolex* and obtains the *Rolex* through extortion, is it a federal crime simply because the officer targeted a drug dealer? The answer is clearly not. The federal government's authority to legislate with respect to the drug trade does not imbue the federal government with the power to federally criminalize all activity that touches a drug dealer's non-drug-dealing activities. Extortion that does not bear on a drug dealers drug dealing activities does not have a sufficient nexus to interstate commerce. It is irrelevant that the victim is a drug dealer if the extortion is unrelated to drug dealing.

There can be no dispute that the error was prejudicial to Mr. Larry's substantial rights. It allowed for conviction based a legally insufficient theory. Because Wilkerson and Allison testified to being drug dealers, the jury was required to convict even if the extortion did not target drugs or drug proceeds. Wilkerson testified that the money taken from him with respect to Count Three was not drug proceeds. And there was no evidence that Mr. Larry intentionally targeted Allison's drugs or drug proceed. But the jury was allowed to convict based on a legally insufficient theory with respect to each extortion count. Each conviction, therefore, must be vacated.

## III.    OTHER ARGUMENTS WERE SUFFICIENTLY DEVELOPED.

Moreover, Mr. Larrys arguments regarding the sufficiency of the evidence were clearly developed. The lack of calls between Mr. Larry and Allison demonstrate a lack of evidence of

---

387-G, 2025 WL 3124460, at *1 (W.D. Okla. Nov. 7, 2025) (disagreeing with the government's argument that the district court "should review the objection presented in the Motion for New Trial for plain error due to Defendant's failure to raise the objection during trial."). In any event, however, the error was plain and warrants a new trial.

Mr. Larry's involvement in Snowden's extortion. And on those calls, Snowden referred only to himself, not Mr. Larry. The fact that Allison briefly mentioned Mr. Larry as an afterthought while making a recorded call in the presence of federal agents is not enough to establish that Mr. Larry was in on Snowden's scheme. Moreover, pointing to Mr. Larry's surprise when he learned that Lanier had obtained money suggests that he was not expecting cash. It clearly supports the argument that he was not aware that money was to be obtained.[8]

Mr. Larry therefore respectfully requests that this Honorable Court grant his motion and enter a judgment of acquittal on all counts or, alternatively, order a new trial as to all counts.

Respectfully submitted,

By: /s/ Beau B. Brindley
Attorney for the Defendant

LAW OFFICES OF BEAU B. BRINDLEY
53 W Jackson Blvd
Suite 1410
Chicago, Illinois 60604
(312) 765-8878

---

[8] The arguments regarding the factual insufficiency of Mr. Larry's involvement in Snowden's scheme overlap for all of the counts. More elaborate discussion would only have served to belabor what was already argued with respect to Count One.

14